S05A1140. SULLIVAN v. THE STATE.
(622 SE2d 823)

HUNSTEIN, Presiding Justice.

James V. Sullivan was indicted by a Fulton County grand jury in 1998 on charges of malice murder, felony murder, aggravated assault and burglary arising out of the 1987 shooting death of his wife, Lita Sullivan.[1] The State has filed notice of its intent to seek the death

---

[1] Sullivan and the victim were involved in contentious divorce proceedings. Sullivan was very wealthy and the victim was challenging the post-nuptial agreement she had signed. In January 1987, Sullivan was living in Palm Springs, Florida and the victim was living in Atlanta. On January 16, 1987, the morning of a scheduled hearing on the divorce, the victim opened her front door to someone bearing flowers bought at a local florist shop and was shot to death in her foyer. Sullivan was at his Florida home at the time. Motive and circumstantial evidence, including telephone calls between Sullivan's home and an Atlanta motel room before

penalty. Sullivan was previously tried and acquitted in 1992 in Federal district court on charges that he violated 18 USC § 1952A (use of interstate commerce facilities in the commission of murder-for-hire). Sullivan filed a motion contending, inter alia, that because of his acquittal on the Federal charges, the State was barred by OCGA § 16-1-8 (c) from prosecuting him on the State charges. The trial court denied Sullivan's motion and we granted his petition for interim review in order to address this ruling. We conclude that OCGA § 16-1-8 (c) does not bar the State from prosecuting Sullivan because the Federal prosecution was for a crime not within the concurrent jurisdiction of this State. Accordingly, we affirm the trial court.

1. OCGA § 16-1-8 (c) provides that

[a] prosecution is barred if the accused was formerly prosecuted in a district court of the United States for a crime which is within the concurrent jurisdiction of this state if such former prosecution resulted in either a conviction or an acquittal and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution or unless the crime was not consummated when the former trial began.

The plain language of OCGA § 16-1-8 (c) creates an unambiguous threshold question: was the prior Federal prosecution for a crime within the concurrent jurisdiction of the State? When that question is answered in the negative, OCGA § 16-1-8 (c) presents no bar to a subsequent State prosecution. Unless the former Federal prosecution was for a crime which is within the concurrent jurisdiction of this State, OCGA § 16-1-8 (c) is inapplicable regardless of any overlap in the accused's conduct that is the subject matter of the two prosecutions.[2] Accord *Dorsey v. State*, 237 Ga. 876, 877 (230 SE2d 307) (1976) (bar in subsection (c) applies only if former prosecution was "for a

---

the murder and calls to an I-85 rest stop shortly after the murder, pointed to Sullivan. Evidence from a witness who first came forward in 1998 led to Sullivan's indictment in this case.

[2] It is only where concurrent jurisdiction exists that the courts must then turn to the next step in the statutory analysis, namely, whether the Federal prosecution resulted in a conviction or an acquittal and, if it did so, whether the State's prosecution was for the same conduct. As plainly expressed by the language in OCGA § 16-1-8 (c), the accused's conduct comes into issue if, and only if, the former Federal prosecution was for a crime within this State's concurrent jurisdiction. Should the court determine that the State's prosecution was for the same conduct, subsection (c) would bar the prosecution unless "each prosecution require[d] proof of a fact not required in the other prosecution" or unless the crime "was not consummated when the former trial began." Id.

crime over which the federal court had jurisdiction and over which the superior court had concurrent jurisdiction").

Concurrent jurisdiction is "[j]urisdiction exercised by different courts, at [the] same time, over [the] same subject matter, and within [the] same territory, and wherein litigants may, in [the] first instance, resort to either court indifferently." Black's Law Dictionary 264 (5th ed. 1979). However, in the context of OCGA § 16-1-8 (c), "concurrent jurisdiction" does not mean that the State must stand on equal footing with the Federal authorities and be able to prosecute an accused in a state court for violation of the Federal statute, in the same manner that Georgia civil courts can entertain causes of action arising solely out of Federal civil law.[3] Such a literal reading of OCGA § 16-1-8 (c) would effectively repeal the statute altogether. See 18 USC § 3231 (United States district courts "shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States"). Under that same rationale, a Federal statute need not expressly preclude the State from prosecuting an accused in a state court under any applicable counterpart in the Criminal Code of Georgia in order to find that no concurrent jurisdiction exists.

In determining what "concurrent jurisdiction" means in the context of OCGA § 16-1-8 (c), we look to the unambiguous statutory language and interpret it so as to give effect to the plain and unequivocal intent of the Legislature. See generally *Abdulkadir v. State*, 279 Ga. 122, 123 (2) (610 SE2d 50) (2005). OCGA § 16-1-8 (c) focuses on whether the "crime" for which the accused was prosecuted in Federal court "*is* within the concurrent jurisdiction of this state." (Emphasis supplied.) This statutory language unambiguously looks to whether there is an existing Georgia penal provision comparable to the Federal crime over which a state court has jurisdiction. Where an accused can be prosecuted in either State court or Federal district court indifferently for the same crime, then that crime is within the concurrent jurisdiction of this State. Conversely, no concurrent jurisdiction exists where no Georgia counterpart exists to the Federal crime so that the accused could be prosecuted for that crime only in a Federal district court. This interpretation gives full meaning and effect to all of the language of OCGA § 16-1-8 (c) and is consistent with the position taken in the Committee Notes, Code Ann. Ch. 26-5, regarding its predecessor provision, Code Ann. § 26-507 (c), that

---

[3] See, e.g., *City of Cave Spring v. Mason*, 252 Ga. 3 (310 SE2d 892) (1984) (Georgia courts can adjudicate 42 USC § 1983 claims); *Neal v. CSX Transp.*, 213 Ga. App. 707 (1) (445 SE2d 766) (1994) (FELA claims); *Collins v. Dept. of Transp.*, 208 Ga. App. 53 (429 SE2d 707) (1993) (Title VII claims).

"[s]ubsection (c) results in protection of the accused against prosecution by the State of Georgia if his act had previously resulted in prosecution by the Federal Government *on the same terms as though the prior prosecution had been by the State of Georgia.*" (Emphasis supplied.)[4]

Contrary to the dissent's position, nothing in our recognition of the threshold "concurrent jurisdiction" requirement renders meaningless the three-step analysis created by the plain and unambiguous language of OCGA § 16-1-8 (c). This can be easily demonstrated by using the dissent's own hypothesis, which assumes the Legislature had enacted a statute comparable to 18 USC § 1952A. Scenario One: a defendant uses a telephone to arrange for the commission of the murder of victim A. If the defendant is prosecuted in the district court for this crime and the prosecution results in the defendant's conviction or acquittal, OCGA § 16-1-8 (c) would bar a subsequent State prosecution of the defendant for using a telephone to arrange for victim A's murder because the State prosecution would be for a crime within the State's concurrent jurisdiction, arising out of the same conduct, and neither prosecution required proof of a fact not required in the other prosecution. Scenario Two: a defendant uses the telephone to arrange for the commission of victim A's murder and for the delivery of cocaine taken from victim A's body. The defendant is prosecuted and convicted in the district court for using the phone to murder victim A, but OCGA § 16-1-8 (c) does not bar the State's prosecution of the defendant for using the phone to arrange for the delivery of cocaine. Although under step 1 concurrent jurisdiction exists in Georgia for the prosecution of the defendant for the crimes of using the phone to arrange either the murder or the drug crime, see OCGA § 16-13-32.3 (a); Division 2, infra, under step 2 of the statutory analysis the former prosecution for the murder-based crime was not for the same conduct as the State's cocaine-based crime. Scenario Three: a defendant places one telephone call to arrange for the murders of both victim A and victim B. The defendant is prosecuted and convicted in the district court for using the phone to murder victim A, but OCGA § 16-1-8 (c) does not bar the State's prosecution of the defendant for using the phone to arrange for the murder of victim B because although under step 1 concurrent jurisdiction exists in Georgia for the prosecution of the defendant for the crime and

---

[4] A contrary interpretation is not supported by our earlier cases interpreting OCGA § 16-1-8 (c) because the existence of concurrent jurisdiction was neither raised nor discussed therein. See *Torres v. State*, 270 Ga. 79 (1) (508 SE2d 171) (1998) and *Satterfield v. State*, 256 Ga. 593 (2) (351 SE2d 625) (1987) (relying solely upon the clear difference in facts necessary to prove the charges); *Dorsey*, supra, 237 Ga. at 876 (parties stipulated charged offenses were the same and arose out of same conduct).

under step 2 the former prosecution was for the same conduct, under step 3 each prosecution required proof of a fact not required in the other prosecution (i.e., the different identities of the two victims). As these scenarios demonstrate, OCGA § 16-1-8 (c) retains full meaning and viability under our interpretation.[5]

2. Applying the correct analysis of OCGA § 16-1-8 (c), we turn to the threshold issue in this case, namely, whether the 1992 Federal prosecution of Sullivan for violating 18 USC § 1952A (now codified as 18 USC § 1958) was for a "crime which is within the concurrent jurisdiction of this state." To make that determination, it is necessary to examine 18 USC § 1952A and compare it to the Criminal Code of Georgia, OCGA § 16-1-1 et seq.

18 USC § 1952A, captioned "[u]se of interstate commerce facilities in the commission of murder-for-hire," was codified in the racketeering chapter of Title 18 (Crimes and Criminal Procedure) of the United States Code and, at the time of Sullivan's prosecution in 1992, provided that

> [w]hoever travels in or causes another . . . to travel in interstate or foreign commerce, or uses or causes another . . . to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, . . . and if death results, shall be punished by death or life imprisonment . . . .[6]

Id. at (a). The statute defines a "facility of interstate commerce" as including "means of . . . communication." Id. at (b) (2). Sullivan's Federal indictment alleged in four counts that he violated this statute by using or causing another to use a telephone to place long distance calls between Atlanta and Palm Beach, Florida, with the intent that

---

[5] Rather, it is the dissent's interpretation that renders utterly unnecessary and meaningless a part of the statute, by ignoring the "concurrent jurisdiction" threshold requirement plainly set forth in the statute.

[6] The current version of 18 USC § 1958, as amended in December 2004, changed "any facility *in* interstate" commerce to "any facility *of* interstate" commerce. This change indicates the intent of Congress to favor the interpretation of the statute by the Fifth and Seventh Circuit Courts of Appeal over that given it by the Eleventh and Sixth Circuits, thereby authorizing Federal prosecution in situations involving only intrastate use of a facility of interstate commerce without the presence in the case of any actual interstate criminal activity. See Murphy, Boundaries of its Commerce Power with an Amendment to the Federal Murder-for-Hire Statute, 13 Wm. & Mary Bill of Rts. J. 1349 (2005).

the murder of Lita Sullivan be committed in exchange for a promise to pay something of pecuniary value.[7]

After Sullivan's acquittal on these charges in 1992, the State indicted him in 1998 on charges of malice murder, felony murder predicated upon aggravated assault, felony murder predicated upon burglary, aggravated assault and burglary. The State did not indict Sullivan on any charge that he unlawfully used or caused another to use a telephone or other communication device to arrange the commission of his wife's murder, nor could the State do so. That is because no such crime exists in Georgia.

A review of the Criminal Code of Georgia reveals that it is unlawful to solicit murder, see OCGA § 16-4-7 (a); to conspire to commit murder, see OCGA § 16-4-8; to attempt to commit murder, see OCGA § 16-4-1; to commit murder itself, OCGA § 16-5-1; and to be a party to the crime of murder, see OCGA § 16-2-20, including situations where a party "[i]ntentionally . . . hires . . . or procures another to commit the crime." Id. at (4). However, nothing in the Criminal Code of Georgia makes it a crime to use or cause another to use a telephone or other communication facility with the intent to commit or cause the commission of any act constituting murder.

It is a crime in Georgia to use a telephone to commit or facilitate the commission of a felony, but only for those felonies involving controlled substances under Chapter 13 of our Criminal Code. OCGA § 16-13-32.3 (a) provides that the use of a "communication facility," e.g., a telephone,[8] is a crime when the phone is used "in committing or in causing or facilitating the commission of any act or acts constituting a felony under [Chapter 13]." Under OCGA § 16-13-32.3 (a) an individual can be prosecuted for each separate use of a telephone to arrange for illegal drugs to be sold, purchased, or transported, among other crimes, notwithstanding the fact that the individual may also be criminally liable for actually selling, purchasing or transporting the drugs. See, e.g., *Capers v. State*, 273 Ga. App. 427 (1) (615 SE2d 126) (2005) (distributing cocaine and using a pager to facilitate a violation of the GCSA); *Russell v. State*, 243 Ga. App. 378 (532 SE2d 137) (2000) (possession of marijuana with intent to distribute and using a telephone to arrange the pickup of the marijuana); *Hayes v. State*, 203 Ga. App. 143 (416 SE2d 347) (1992)

---

[7] We note that the record fails to contain a certified copy of Sullivan's Federal prosecution, but the State raised no objection and has affirmatively acknowledged the facts surrounding that earlier prosecution.

[8] OCGA § 16-13-32.3 (a) defines "communication facility" solely for purposes of that Code section as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, computer or computer network, and all other means of communication."

(distributing cocaine and using a telephone to arrange the drug deal); *Cassie v. State*, 192 Ga. App. 484 (385 SE2d 129) (1989) (trafficking in cocaine, possessing cocaine with intent to distribute and using a "beeper" with telephone callbacks); *Baptiste v. State*, 190 Ga. App. 451 (379 SE2d 165) (1989) (violation of OCGA § 16-13-30 and using a series of telephone calls to purchase cocaine). As these cases demonstrate, the use of a telephone or other communication facility to facilitate a drug felony is a crime in and of itself, separate and distinct from the felonies the telephone is used to facilitate. OCGA § 16-13-32.3 thus serves to rebut Sullivan's and the dissent's argument that the statutory language in 18 USC § 1952A setting forth the "method" in which the murder is facilitated is an extraneous jurisdictional element that should not be used to "set apart" the crime for double jeopardy purposes.[9]

Although the Legislature enacted OCGA § 16-13-32.3 as the Georgia counterpart to 21 USC § 843 (b), the Federal crime of using a telephone to arrange for the commission of a drug crime, see *Hunt v. State*, 196 Ga. App. 694 (3) (396 SE2d 802) (1990), there is no Georgia counterpart to 18 USC § 1952A. The Legislature has not chosen to make it a crime in Georgia to use a telephone to arrange for the commission of murder, nor is there any penal statute with provisions comparable to 18 USC § 1952A in the Georgia Criminal Code.[10] That the State *could* entertain concurrent jurisdiction with Federal courts over crimes involving the use of a communication facility to commit murder-for-hire,[11] if it chose to enact such legislation, does not change the fact that in the absence of such legislation no Georgia court had in 1992 or has now concurrent jurisdiction over the crime for which Sullivan was prosecuted in a United States district court. No concurrent jurisdiction exists because no Georgia state court could serve as a proper forum for resolution of criminal

---

[9] The dissent completely ignores the Legislature's enactment of OCGA § 16-13-32.3 (a), and in light of that statute it is difficult to fathom the dissent's claim that the Legislature "would never enact" a statutory counterpart to 18 USC § 1952A to make it a crime in Georgia to use a telephone or other communication facility to arrange for the commission of murder-for-hire.

[10] It is for the legislature, not the courts, to identify conduct that warrants treatment as a crime and affix the punishment for that conduct. *Wood v. State*, 219 Ga. 509, 514 (134 SE2d 8) (1963). " 'A crime is a felony or not, according to the penalty fixed by the legislature; and it is not within the province of the courts to help out the legislature. Under our system, that body has exclusive jurisdiction over the subject, and if, by mistake or otherwise, it has failed to provide for the punishment of a crime, it must go unpunished.' " (Emphasis omitted.)

[11] See 18 USC § 3231 ("[n]othing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof"); *United States v. Marek*, 238 F3d 310, 323 (5th Cir. 2001) and *United States v. Dickson*, 645 FSupp. 727, 730 (1) (D.C.C. 1986) (Congress recognized 18 USC § 1958 (former 18 USC § 1952A) would permit concurrent jurisdiction with state and local forces).

charges arising out of the unlawful use of a telephone to arrange the commission of murder-for-hire.

Thus, in this case the threshold question posed by OCGA § 16-1-8 (c) must be answered in the negative, rendering it irrelevant how Sullivan's Federal and State prosecutions would fare under the analysis set forth in the rest of the statute. Accordingly, we hold that the 1992 Federal prosecution of Sullivan cannot serve to bar the State's prosecution of Sullivan for the crimes of malice murder, felony murder, aggravated assault and burglary.

3. We decline Sullivan's suggestion that we abandon our adherence to the long-standing doctrine of dual sovereignty. See, e.g., *Satterfield v. State*, 256 Ga. 593 (2) (351 SE2d 625) (1987).

4. We find no error in the trial court's ruling that collateral estoppel does not apply because the "same parties" are not attempting to relitigate facts necessarily found in the earlier prosecution. See generally *Simmons v. State*, 276 Ga. 525, 527 (579 SE2d 735) (2003).

*Judgment affirmed. All the Justices concur, except Sears, C. J., Hines and Melton, JJ., who dissent.*

SEARS, Chief Justice, dissenting.

The majority opinion is wrong. I therefore dissent.

Before 1968, the State of Georgia, under the dual sovereignty doctrine, could prosecute a defendant even though the federal government had already prosecuted him for what is considered the "same offense" for double jeopardy purposes. In 1968, however, the General Assembly enacted OCGA § 16-1-8 (c), intending to foreclose the State's ability to try a defendant after his acquittal or conviction of the "same offense" in federal court.[12] This statute, properly applied, should bar Sullivan's prosecution for malice murder in Georgia. In its zeal to limit the scope of the statute, however, the majority has taken over the legislative function and rewritten the statute to render it meaningless, thus permitting the State to prosecute Sullivan for malice murder. The majority's novel interpretation of § 16-1-8 (c) — that a defendant is only "formerly prosecuted" in federal district court for a "crime which is within the concurrent jurisdiction of this state" when this State has a crime that mirrors the federal crime — violates basic rules of statutory construction, defeats the plain intent of the statute, and is illogical and impractical. In the first part of this dissent, I will explain why the majority's interpretation of the statute is incorrect. In the second part, I will apply the statute, as properly construed, and demonstrate why it bars Sullivan's prosecution in Georgia for malice murder.

---

[12] See Ga. Laws 1968, pp. 1249, 1267-1269, enacting then Code Ann. § 26-507 (c), the predecessor to OCGA § 16-1-8 (c). The provision has not changed since it was enacted in 1968.

## A. THE INTERPRETATION OF OCGA § 16-1-8 (c)

1. Although the majority attempts to interpret OCGA § 16-1-8 (c) without reference to its legal underpinnings, some discussion of the constitutional backdrop to the statute is necessary for an understanding of the statute's purpose. The Double Jeopardy Clause of the Fifth Amendment to the U. S. Constitution and Article I, Section I, Paragraph XVIII of the Georgia Constitution provide that no person shall be subject for the same offense to be twice put in jeopardy of life or liberty.[13] "This protection encompasses not just multiple punishments by a single sovereign for the same offense, but also successive prosecutions for the same offense."[14] "Unless each offense requires proof of an additional fact which the other does not (the same-elements test to determine if two charges or convictions constitute the 'same offense' under the Fifth Amendment as outlined in *Blockburger v. United States*, . . .[15]), 'the Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment.' [Cit.]"[16]

It is well-settled, however, that under the dual sovereignty doctrine successive prosecutions by two separate sovereigns for the same offense do not violate the Double Jeopardy Clause of the Constitution.[17] "The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government."[18] When a defendant in a single act breaks the law of two sovereigns, he has committed two distinct offenses and may be prosecuted and punished by each sovereign for the violation of its law.[19] It is also well-settled that Georgia is a separate sovereign with respect to the federal government because its power to prosecute and punish violators of its laws derives from its "inherent sovereignty" and not that of the federal government.[20] Under the Constitution, double jeopardy is not violated when Georgia and the federal

---

[13] *Brown v. Ohio*, 432 U. S. 161, 164 (II) (97 SC 2221, 53 LE2d 187) (1977); *Perkinson v. State*, 273 Ga. 491, 493-494 (1) (542 SE2d 92) (2001); *Laster v. State*, 268 Ga. 172, 173 (1) (486 SE2d 153) (1997).

[14] *Perkinson*, 273 Ga. at 494. See also *Brown*, 432 U. S. at 165; *United States v. Dixon*, 509 U. S. 688, 696 (II) (113 SC 2849, 125 LE2d 556) (1993).

[15] 284 U. S. 299 (52 SC 180, 76 LE 306) (1932).

[16] *Perkinson*, 273 Ga. at 494. See also *Dixon*, 509 U. S. at 696; *Brown*, 432 U. S. at 166. See also *Prater v. State*, 273 Ga. 477, 481 (545 SE2d 864) (2001) ("A lesser or greater included offense is treated as the same offense for double jeopardy purposes.").

[17] See *Heath v. Alabama*, 474 U. S. 82, 88 (II) (106 SC 433, 88 LE2d 387) (1985).

[18] Id.

[19] Id.

[20] See id. at 89; *United States v. Wheeler*, 435 U. S. 313, 320 (II) (98 SC 1079, 55 LE2d 303) (1978); *Abbate v. United States*, 359 U. S. 187, 193-194 (79 SC 666, 3 LE2d 729) (1959).

government each prosecute a defendant for the "same offense" arising from the same conduct.[21]

2. The General Assembly enacted OCGA § 16-1-8 (c), the text of which is recited in the majority opinion, in 1968.[22] The Committee Notes for this statute state that OCGA § 16-1-8 (c)

> is a new feature in the law of Georgia, in which it has long been held that double jeopardy provisions of the Constitution do not prohibit multiple prosecution[s] for the same act if that act constituted an offense against more than one sovereign. Subsection (c) results in protection of the accused against prosecution by the State of Georgia if his act had previously resulted in prosecution by the Federal Government on the same terms as though the prior prosecution had been by the State of Georgia.[23]

Clearly, the General Assembly intended that OCGA § 16-1-8 (c) function as an exception to the dual sovereignty doctrine by barring a state prosecution if the accused had been previously convicted or acquitted of the "same act" in the federal courts.[24] By its terms, it bars a state prosecution after a federal conviction or acquittal of a crime involving the same conduct "unless each prosecution requires proof of a fact not required in the other prosecution. . . ."[25]

3. The majority's unprecedented interpretation of OCGA § 16-1-8 (c) violates basic rules of statutory construction. "The cardinal rule in construing a legislative act, is ' "to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose." ' "[26]

---

[21] "Concurrent jurisdiction" in the double jeopardy context means that more than one sovereign has criminal jurisdiction over a defendant who has committed the "same offense." See *Heath v. Alabama*, 474 U. S. at 91-92 (III). See also *Lewis v. United States*, 523 U. S. 155, 181 (118 SC 1135, 140 LE2d 271) (1998) (Kennedy, J., dissenting) ("A central tenet of federalism is concurrent jurisdiction over many subjects. [Cit.] One result of concurrent jurisdiction is that, outside federal enclaves, citizens can be subject to the criminal laws of both state and federal sovereigns for the same act or course of conduct. [Cit.]").

[22] See footnote 12, supra.

[23] *Dorsey v. State*, 237 Ga. 876, 877-878 (230 SE2d 307) (1976).

[24] See id. at 878. See also *State v. Estevez*, 232 Ga. 316, 317 (206 SE2d 475) (1974) ("The 1968 Georgia Criminal Code has expanded the proscription of double jeopardy beyond that provided for in the United States and Georgia Constitutions."). OCGA § 16-1-8 (c) is constitutional, *Dorsey*, 237 Ga. at 878, and it is not unique as several other states have enacted similar statutes. See, e.g., Cal. Penal Code §§ 656, 793 (2005); Colo. Rev. Stat. § 18-1-303 (2004); Mont. Code Ann. § 46-11-504 (2004); N.J. Stat. Ann. § 2C:1-11 (2005); 18 Pa. C. S. § 111 (2005).

[25] OCGA § 16-1-8 (c). Not coincidentally, this is the test to determine if two offenses are the "same offense" for double jeopardy purposes: whether each offense requires proof of a fact (i.e., an element) that the other does not. See *Brown*, 432 U. S. at 166; *Blockburger*, 284 U. S. at 304.

[26] *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003).

In the present case, there is a clear statement of legislative intent. The Committee Notes state that OCGA § 16-1-8 (c) was intended to "result[ ] in protection of the accused against prosecution by the State of Georgia if his act had previously resulted in prosecution by the Federal Government *on the same terms as though the prior prosecution had been by the State of Georgia.*"[27] This states the legislative intent that the focus of OCGA § 16-1-8 (c) is on the act of the defendant and is on treating, for statutory double jeopardy purposes, any prior prosecution in federal court as if the prosecution had been by the State of Georgia. Thus, in the present case, Sullivan's trial in federal court for murder-for-hire must be treated, for purposes of § 16-1-8 (c), as if it occurred in Georgia. The majority's interpretation of § 16-1-8 (c), which mistakenly focuses on whether Georgia has a crime that mirrors the federal crime, defeats the legislative intent that this double jeopardy bar also apply in the federal-state context.

4. Another rule of statutory construction is that " '[l]anguage in one part of the statute must be construed in light of the legislature's intent as found in the whole statute.' [Cit.]"[28] "This Court is to construe the statute to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless."[29]

As recognized by the majority,[30] OCGA § 16-1-8 (c) consists of three parts: (1) Was the accused "formerly prosecuted in a district court of the United States for a crime which is within the concurrent jurisdiction of this state?"; (2) If so, was the accused convicted or acquitted in federal court and is the state prosecution for the "same conduct" that was the subject of the federal prosecution?; and (3) If so, does "each prosecution require[ ] proof of a fact not required in the other prosecution?" The majority's construction of the first part of the statute renders the last two parts completely meaningless.

Under the majority's construction, if Georgia does not have a crime that mirrors the federal crime, the last two parts of the statute are inapplicable, and the defendant may always be tried in Georgia.

Moreover, under the majority's construction, if Georgia does have a crime that mirrors the federal crime, the last two parts of the statute have no application, as the inquiries in the last two parts will be dictated by the answer to the first part, and the answer to the first part of the statute will always lead to the conclusion that the defendant may not be tried in Georgia. The majority's concurrent

---

[27] See *Dorsey*, 237 Ga. at 877-878 (emphasis supplied).

[28] *Haugen v. Henry County*, 277 Ga. 743, 745 (594 SE2d 324) (2004).

[29] *State v. English*, 276 Ga. 343, 348 (578 SE2d 413) (2003).

[30] See Division 1, page 894, of the majority opinion.

jurisdiction analysis therefore makes most of OCGA § 16-1-8 (c) irrelevant. But if "concurrent jurisdiction" of a crime means that the federal and state offenses must be identical, as the majority urges, without reference to the basic double jeopardy definition of what constitutes the "same offense," why did the General Assembly include the *Blockburger* test ("unless each prosecution requires proof of a fact not required in the other prosecution") in the last part of OCGA § 16-1-8 (c)? If the majority's interpretation of concurrent jurisdiction of a crime is adopted, any crime satisfying the majority's concurrent jurisdiction definition will automatically meet this part of OCGA § 16-1-8 (c). This portion of the statute will never be needed and is meaningless.

To illustrate this latter point, assume that Georgia has a crime of using a telephone or communication facility to commit murder and that a defendant has been acquitted in federal district court of using a telephone to commit murder-for-hire. The issue is whether OCGA § 16-1-8 (c) bars his prosecution in Georgia for malice murder. Under the majority's analysis, the first part of OCGA § 16-1-8 (c) is satisfied, as the Georgia crime mirrors the federal crime. The second part of the statute, however, is meaningless, as the answer to its inquiry (is the state prosecution for the "same conduct" that was the subject of the federal prosecution) will always be answered in the positive, as the Georgia crime of using a telephone or communication facility to commit murder will, of necessity, involve the "same conduct" as the identical federal crime. Similarly, the third part of the statute is rendered meaningless. Because the Georgia crime of using a telephone or communication facility to commit murder will mirror the federal crime, the third part of the statute (whether "each prosecution requires proof of a fact not required in the other prosecution") must, of necessity, be answered in the negative. Thus, under the majority's construction, the answer to the first part of the statute dictates the answer to the last two parts and leads to the conclusion that the defendant may not be tried in Georgia.

Accordingly, the majority has essentially rewritten the statute as follows: "A prosecution is barred if the accused was formerly prosecuted in a district court of the United States for a crime which is within the concurrent jurisdiction of this state."[31] Under the statute, as rewritten by the majority, if this State has a crime that mirrors the federal crime, the accused always will have been prosecuted in federal district court for a crime within this State's concurrent

---

[31] Of course, other aspects of the statute, not relevant to the majority's construction, will still apply, namely, whether the defendant was acquitted or convicted in federal court and whether the state crime was "not consummated" when the federal trial began.

jurisdiction, and the accused's prosecution for the state crime always will be barred. If this State does not have a crime that mirrors the federal crime, the accused always may be prosecuted in Georgia. This rewriting of the statute by the majority is an inappropriate exercise of this Court's authority. It is also novel as previous Georgia courts did not use the majority's definition of "concurrent jurisdiction"; instead, they applied the entire statute, including the *Blockburger* test, in cases involving OCGA § 16-1-8 (c).[32]

Moreover, adopting the majority's narrow concurrent jurisdiction analysis would render the entire statute unnecessary. The federal government, when criminalizing conduct that is generally intrastate, must connect the harm to interstate commerce in order for the statute to be constitutional.[33] Federal charges like murder-for-hire or carjacking specifically allege an instrumentality of interstate commerce or nexus with interstate commerce because federal jurisdiction is dependent on it.[34] The federal government alleged that Sullivan used an interstate telephone call in his federal indictment, not because the use of the telephone is the harm that it seeks to prevent, as the majority mistakenly asserts, but because, without the interstate telephone call, there is no federal jurisdiction and therefore no federal crime.[35] For this reason, there will be additional jurisdictional elements, such as an interstate telephone call or the allegation that a vehicle has been transported in interstate commerce, alleged in most federal charges that are not required in a state charge that prohibits the same harm. Because Georgia does not need such jurisdictional hooks to hold defendants responsible for crimes committed in this State, Georgia will rarely, if ever, enact a statute that mirrors a federal charge by including federal jurisdiction prerequisites, such as the use of an interstate telephone call.

5. Another important rule of statutory construction is that criminal statutes must be construed strictly against the State,[36] and in favor of the defendant.[37] This rule of statutory construction has been

---

[32] See *Torres v. State*, 270 Ga. 79, 79-80 (508 SE2d 171) (1998); *Satterfield v. State*, 256 Ga. 593, 595 (351 SE2d 625) (1987); *Scott v. State*, 250 Ga. App. 870, 871-872 (553 SE2d 276) (2001); *McAlister v. State*, 236 Ga. App. 609, 609-610 (512 SE2d 53) (1999).

[33] See *United States v. Lopez*, 514 U. S. 549, 561-562 (115 SC 1624, 131 LE2d 626) (1995); *United States v. Ballinger*, 395 F3d 1218, 1226 (11th Cir. 2005) ("[C]ongressional power to regulate the channels and instrumentalities of [interstate] commerce includes the power to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature.").

[34] See 18 USC §§ 1958; 2119.

[35] See *Ballinger*, 395 F3d at 1226.

[36] *Hughes v. State*, 269 Ga. 819, 821 (504 SE2d 696) (1998); *Mitchell v. State*, 239 Ga. 3, 3 (1) (235 SE2d 509) (1977).

[37] *State v. Langlands*, 276 Ga. 721, 724 (583 SE2d 18) (2003).

ignored by the majority in this case. Their novel interpretation of OCGA § 16-1-8 (c) is the interpretation most adverse to the defendant. Statutory construction is not intended to be creative license, and OCGA § 16-1-8 (c) does not state that "a crime within the concurrent jurisdiction of this state" must be the mirror image of the federal crime. Construing the statute most favorably to the accused would lead to the interpretation that the foregoing phrase includes any crime in Georgia that arose from the conduct that gave rise to the federal prosecution.[38]

6. The majority's interpretation — that there is no "concurrent jurisdiction" unless a Georgia statute specifically contains all the elements required in the federal charge — is not logical and would lead to absurd results. For example, if a Georgia resident receives money to kill his Georgia neighbor and walks next door to his neighbor's house and kills him, then that is malice murder under Georgia law and there is no federal jurisdiction to charge him with murder-for-hire. If a resident of Alabama receives money to kill his Georgia neighbor and walks next door, across the state line into Georgia and kills the neighbor, then that is malice murder in Georgia and murder-for-hire under federal law.[39] Under the majority's logic, if the federal government then tries and acquits the defendant of murder-for-hire, his ensuing state prosecution is not barred under OCGA § 16-1-8 (c) because there is no state statute that specifically criminalizes Traveling to Commit Murder-For-Hire, i.e., making "traveling" an element of the state murder charge. Of course, the General Assembly would never enact such a statute, just as it would also never enact a statute that specifically prohibits the use of a

---

[38] In addition, although a number of sister states have dual sovereignty doctrine exception statutes, the majority fails to cite any that have employed its reasoning and conveniently ignores another state's statute that is worded the same as OCGA § 16-1-8 (c). See Kan. Stat. Ann. § 21-3108 (3) (a) ("A prosecution is barred if the defendant was formerly prosecuted in a district court of the United States or in a court of general jurisdiction of a sister state . . . *for a crime which is within the concurrent jurisdiction* of this state, if such former prosecution . . . [r]esulted in either a conviction or an acquittal, and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution. . . ."). Perhaps this is because Kansas has not employed the majority's strained statutory analysis. In *Kansas v. Henwood*, 756 P2d 1087 (Kan. 1988), the Kansas Supreme Court compared the elements of the defendant's Missouri receiving stolen property conviction with his Kansas car theft charge for the same conduct, as required by the *Blockburger* test, and determined that the Kansas charge was barred by its version of OCGA § 16-1-8 (c). Id. at 1089-1091. The Kansas Court held that the Kansas crime did not have to be identical to the Missouri crime for there to be concurrent jurisdiction. Kansas cases addressing the dual sovereignty doctrine exception statute in the federal-state context also did not use the majority's "concurrent jurisdiction" analysis but proceeded to the *Blockburger* test embodied in their statute and ours. See *Kansas v. Smith*, 585 P2d 1006, 1013 (Kan. 1978); *Kansas v. Worth*, 537 P2d 191, 196 (Kan. 1975).

[39] See 18 USC § 1958 (prohibiting interstate travel to commit murder-for-hire).

telephone to commit murder-for-hire, because the existing murder statute, OCGA § 16-5-1, adequately covers these situations.

In another example, if the majority's suggested state charge of "Using the Telephone to Commit Murder-for-Hire" were adopted by the General Assembly, and a defendant was acquitted of federal murder-for-hire, the State of Georgia would be free to prosecute the defendant for *malice murder* under the majority's interpretation of OCGA § 16-1-8 (c). A state prosecutor thus would never charge a defendant with Using the Telephone to Commit Murder-for-Hire,[40] rendering that crime a nullity.

## B. THE PROPER ANALYSIS OF SULLIVAN'S PROSECUTION

7. Having determined that the majority's interpretation of OCGA § 16-1-8 (c) is wrong, I will now undertake to determine whether Sullivan's prosecution in the State of Georgia is barred under the proper interpretation of that statute.

Sullivan is charged in state court with malice murder, felony murder, two counts of aggravated assault, and burglary. In a 1992 jury trial, a federal district court judge directed a verdict of acquittal on four counts of violating 18 USC § 1958, the federal murder-for-hire statute, arising from the same conduct as the state charges.[41] Sullivan moved in the trial court that, under the provisions of OCGA § 16-1-8 (c), his prosecution on the state charges be barred. The trial court denied Sullivan's motion to bar his prosecution. I would conclude, under a proper analysis of OCGA § 16-1-8 (c), that the elements of the state malice murder charge are completely contained within the federal murder-for-hire prosecution, and that the State is thus barred by OCGA § 16-1-8 (c) from prosecuting Sullivan for malice murder. I would also conclude, however, that the State is not barred by OCGA § 16-1-8 (c) from prosecuting Sullivan for felony murder with burglary as the underlying felony.[42]

I will initially focus on the malice murder charge. In this regard, the chief issue for resolution is whether the federal murder-for-hire

---

[40] See *Freeman v. State*, 264 Ga. 27, 29 (440 SE2d 181) (1994) (" 'Given any set of facts, prosecutors must exercise discretion as to what the criminal charge will be.' [Cit.]").

[41] *United States v. Sullivan*, 809 FSupp. 934 (N.D. Ga. 1992).

[42] The State clearly has concurrent jurisdiction over Georgia crimes that arose from the conduct of the accused that led to the federal prosecution, see p. 902, n. 21 and p. 906, n. 38, of this dissent, thus satisfying the first part of OCGA § 16-1-8 (c). Moreover, Sullivan was acquitted in federal court, and the state prosecution is for the same conduct as the federal prosecution, thus satisfying the second part of OCGA § 16-1-8 (c). Thus, the only part of OCGA § 16-1-8 (c) that is at issue is whether "each prosecution require[d] proof of a fact not required in the other prosecution."

charge required the prosecutor to prove the victim's death as an element of the offense, because, in denying Sullivan's motion to bar his prosecution under OCGA § 16-1-8 (c), the state trial court found that the victim's death was not a required element of murder-for-hire while her death is a required element of the state charge of malice murder.[43] The federal statute under which Sullivan was charged and acquitted in 1992 was the federal murder-for-hire statute, 18 USC § 1958, which specifies that

> [w]hoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with the intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.[44]

The Georgia statute on malice murder, OCGA § 16-5-1 (a), specifies,

> A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.

OCGA § 16-5-1 further defines malice as "that deliberate intention unlawfully to take the life of another human being. . . ."[45]

The few Georgia cases on OCGA § 16-1-8 (c) involved the proper analysis of the federal and state prosecutions to determine if they each required proof of a fact not required in the other prosecution such that the statute would operate to bar the state prosecution.[46]

---

[43] See *Torres v. State*, 270 Ga. at 79-80 (1).

[44] 18 USC § 1958 (a). There have been some minor changes to the text of this statute since Sullivan's federal prosecution. However, we use the current statute in this decision because none of the changes altered the statute in any way relevant to our analysis.

[45] OCGA § 16-5-1 (b). See also *Tessmer v. State*, 273 Ga. 220, 222 (2) (539 SE2d 816) (2000) ("Malice means the intent to take a life without legal justification or mitigation.").

[46] See *Dorsey*, 237 Ga. at 877-878 (state prosecution for murder, kidnapping, and robbery barred by federal convictions arising from same conduct); *Satterfield*, 256 Ga. at 595 (the state prosecution for malice murder and assault with a deadly weapon was not barred by federal

The case that is most similar to Sullivan's on this issue is *Torres v. State*.[47] Torres was charged by the State with felony murder, armed robbery, and kidnapping with bodily injury due to his alleged involvement in the robbery of a van and the felony murder and kidnapping of the van's driver.[48] He was also charged with carjacking by the federal government under 18 USC § 2119, which specifies that

> [w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall —
>     (1) be fined under this title or imprisoned not more than 15 years, or both,
>     (2) if serious bodily injury . . . results, be fined under this title or imprisoned not more than 25 years, or both, and
>     (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

Torres pled guilty to carjacking before his state trial and then filed a plea of former jeopardy, claiming that OCGA § 16-1-8 (c) barred his state prosecution. This Court determined that the federal conviction required proof that the van had been transported in interstate commerce, something that would not be required for any of the state charges.[49] The Court further held that the state charges of armed robbery and kidnapping with bodily injury required proof of different elements than carjacking, because the objects of the taking in the armed robbery charge were the victim's money and jewelry, not the van, and the kidnapping charge required proof of the asportation of

---

charges of kidnapping and interstate travel with intent to commit murder for the purpose of extortion because the state and federal offenses obviously required proof of different facts); *Scott*, 250 Ga. App. at 871-872 (2) (federal acquittal of knowing possession of a firearm transported in interstate commerce by a convicted felon had different element from state charge of possession of a firearm during the commission of a felony and vice versa); *Moser v. State*, 246 Ga. App. 268, 269-270 (2) (538 SE2d 904) (2000) (prior federal conviction of conspiracy to possess with intent to distribute methamphetamine had different element from state charges of possession of methamphetamine and trafficking in more than 28 grams of methamphetamine and vice versa; the federal government had to prove a conspiracy involving Moser's participation in an unlawful agreement to distribute methamphetamine, which the State did not, and the State had to prove Moser's possession of methamphetamine and, for trafficking, possession of more than 28 grams of methamphetamine, which the federal government did not).

[47] 270 Ga. at 79-80 (1).
[48] Id. at 79.
[49] Id. at 80.

the victim, which was obviously not required in the federal prosecution.[50] Most significantly, the Court held that the felony murder charge required proof of the death of the victim, and the federal carjacking charge did not require this.[51] At the time, federal courts had construed the federal carjacking statute, 18 USC § 2119, as not including the death of the victim as an element of the offense.[52] Since we agreed with the federal courts that the victim's death was not an element of the offense for carjacking, each charge required proof of a different fact from the other charge and there was no bar to Torres's state prosecution under OCGA § 16-1-8 (c).[53]

Approximately five months after this Court issued the *Torres* decision, the United States Supreme Court decided *Jones v. United States*,[54] which addressed whether the victim's serious bodily injury or death that subjected a defendant to greater punishments in a carjacking charge were sentencing enhancements or elements of the offense. The United States Supreme Court determined that statutory construction, bolstered by due process and Sixth Amendment concerns over the propriety of removing certain fact-finding from the jury's consideration, required a holding that the carjacking statute's increased punishment predicated upon the finding of the victim's serious bodily injury or death was an element of the offense.[55]

In light of *Jones*, I am compelled to conclude that a victim's death alleged in the murder-for-hire statute, which subjects a defendant to increased punishment, is an element of the offense. I am also compelled to conclude that Sullivan was charged in 1992 by the federal government with the victim's death as well as the intent element of the state charge of malice murder. The most relevant count of his 1992 federal indictment charged:

> On or about January 16, 1987, in the Northern District of Georgia, the defendant, JAMES V. SULLIVAN, did knowingly and intentionally cause another to use an interstate communication facility, to wit: a long distance telephone call between Suwanee, Georgia and Palm Beach, Florida, *with the intent that the murder of Lita McClinton Sullivan be committed in violation of the laws of the State of Georgia as*

---

[50] Id. See also OCGA §§ 16-5-40 (a); 16-8-41 (a).

[51] *Torres*, 270 Ga. at 80. See also OCGA § 16-5-1 (c). The underlying felony of Torres's felony murder charge was the armed robbery of unspecified "property," which Torres argued was the taking of the van.

[52] See *United States v. Rivera-Gomez*, 67 F3d 993, 1000 (1st Cir. 1995); *United States v. Williams*, 51 F3d 1004, 1009-1010 (11th Cir. 1995).

[53] See *Torres*, 270 Ga. at 80.

[54] 526 U. S. 227 (119 SC 1215, 143 LE2d 311) (1999).

[55] Id. at 239.

consideration for an agreement and promise to pay a thing of pecuniary value, and as consideration for the receipt of a thing of pecuniary value, *said offense resulting in the death of Lita McClinton Sullivan*, in violation of Title 18, United States Code, Section 1952A.[56]

(Emphasis supplied.) The trial court correctly found that the federal murder-for-hire charge required proof of a fact not required to be proved in the state malice murder charge, use of an interstate communication facility. However, the trial court erred by finding that the victim's death was not an element of the offense that needed to be proved in the federal charge, because it was an element of the murder-for-hire charge and Sullivan was expressly charged with causing her death.[57] Therefore, the state malice murder charge, which requires malice (an unlawful intent to kill) and the victim's death, is completely contained within the elements of the federal murder-for-hire charge, and there is no proof of a fact required in malice murder beyond that needed for the federal charge. The conclusion is inescapable that OCGA § 16-1-8 (c) operates to bar Sullivan's state prosecution for malice murder.[58]

The State should also be barred from prosecuting Sullivan on the aggravated assault charges, because, based upon the elements of the offense of aggravated assault and the aggravated assault charges in Sullivan's state court indictment, they are lesser-included offenses of his malice murder charge.[59] It is well-settled that the State cannot prosecute a defendant for a lesser-included offense after his conviction or acquittal of a greater offense.[60] However, the State should not be barred by OCGA § 16-1-8 (c) from prosecuting Sullivan for burglary and felony murder predicated on burglary because burglary obviously requires proof of a different element from the federal murder-for-hire charge, and vice versa, so statutory double jeopardy is not violated.[61] Burglary and felony murder based upon burglary

---

[56] 18 USC § 1952A was redesignated 18 USC § 1958 in 1988.

[57] See *Jones*, 526 U. S. at 251-252.

[58] See *Dorsey*, 237 Ga. at 878.

[59] See *Brown*, 432 U. S. at 166-169 (II); *Perkinson*, 273 Ga. at 494; *Prater*, 273 Ga. at 481; *King v. State*, 178 Ga. App. 343, 344 (343 SE2d 401) (1986) (There are two essential elements of aggravated assault: "one, that an assault, as defined in OCGA § 16-5-20, was committed on the victim, and two, that it was aggravated by either an intention to [murder] or use of a deadly weapon."). See also OCGA § 16-5-21.

[60] See *Brown*, 432 U. S. at 165-166; *Perkinson*, 273 Ga. at 494.

[61] See OCGA § 16-7-1 (a); *Cash v. State*, 258 Ga. 460, 462 (1) (368 SE2d 756) (1988) ("[F]or substantive double jeopardy purposes, neither a burglary conviction nor a murder conviction is a lesser included offense within the other 'since proof of additional elements must necessarily be shown to establish each crime.' [Cit.]").

are also not lesser-included offenses of malice murder.[62] Under a proper analysis of OCGA § 16-1-8 (c), the State would be permitted to try Sullivan for felony murder predicated on burglary and burglary.

8. The majority's position on OCGA § 16-1-8 (c) is contrary to plain legislative intent, violates numerous rules of statutory construction, and renders the statute meaningless. The majority's argument — that there can be no "concurrent jurisdiction" within the meaning of OCGA § 16-1-8 (c) unless the General Assembly enacts a criminal statute that mirrors the federal charge — means that the General Assembly would have enacted a double jeopardy statute that contravenes basic double jeopardy principles and bars virtually no prosecutions. The legislature clearly intended that OCGA § 16-1-8 (c) be an exception to the dual sovereignty doctrine, and that it bar a state prosecution after a federal conviction or acquittal for what is the "same offense" under basic double jeopardy law. As a court, we must in every case apply the laws as they are enacted. Regardless of the result, the purpose of a statute is not an obstacle for us to overcome. Applying OCGA § 16-1-8 (c) to the facts of this case should bar Sullivan's state court prosecution for malice murder.

For the foregoing reasons, I dissent to the majority opinion.

I am authorized to state that Justice Hines and Justice Melton join in this dissent.

DECIDED NOVEMBER 21, 2005.

*Garland, Samuel & Loeb, Edward T. M. Garland, Donald F. Samuel, Josh D. Moore,* for appellant.

*Paul L. Howard, Jr., District Attorney, Anne E. Green, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher D. Helms, Assistant Attorney General,* for appellee.

---

[62] See id.; *Henry v. State,* 265 Ga. 732, 737 (6) (462 SE2d 737) (1995).