United States Court of Appeals,

Eleventh Circuit.

No. 95-8903.

UNITED STATES of America, Plaintiff-Appellee,

v.

James Kevin CAROTHERS, Defendant-Appellant.

Sept. 10, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-CR-234-7-GET), G. Ernest Tidwell, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Before August 1994, agents of the Drug Enforcement Agency ("DEA") were conducting a long-term investigation of Defendant-Appellant James Carothers ("Defendant") and several other people about a conspiracy to distribute cocaine and MDMA (a/k/a "Ecstasy"). At this time, the DEA was using an informant to make several controlled buys of cocaine and MDMA from these conspirators, including Stephen Farrar. In August 1994, the DEA, based upon the informer's knowledge, approached Farrar about his involvement in the conspiracy; Farrar agreed to cooperate with the DEA.

On 30 September 1994, the DEA set up a sting operation in which Farrar participated. The operation involved Farrar acting as a middleman between Stephen Smith and Defendant. As a result, the DEA arrested Defendant, Smith, and Thomas Lehr (another party to the transaction) for the attempted distribution of MDMA.[1] The 1994 transaction is the subject of this opinion, but the evidence discussed below is relevant to the decision.

At trial, Farrar testified that from 1991 to 1993 he dealt illegal drugs, including cocaine and MDMA, with Defendant and several other people. Farrar said that he bought MDMA from

---

[1] The MDMA involved in this transaction turned out to be a noncontrolled legal substance rather than an illegal form of MDMA. Therefore, the parties could not be convicted of the substantive offenses of possession and distribution of MDMA.

Defendant ten to twelve times and described the different ways in which the exchanges took place. Also, Farrar testified that Defendant made it clear that they were not to use the terms "Ecstasy" or "MDMA" on the telephone. Instead, Farrar was to use code language to communicate to Defendant the amount of MDMA he wanted.

Farrar testified about a drug transaction that took place on 8 December 1993 that involved himself, Rob Canavan, Joe Sternagle, and Defendant. Canavan and Sternagle met Farrar in a restaurant parking lot and gave him $9,500. Farrar took this money and bought 1,000 tablets of MDMA from Defendant and then delivered the MDMA to Canavan. Farrar also testified that Defendant preferred using Farrar as a middleman when dealing with Canavan because Defendant believed Canavan was too high-profile of a drug dealer.

Canavan corroborated Farrar's testimony about the December 1993 drug transaction and stated that Farrar had told him that his source was Defendant. On 17 December 1993, Canavan sold 100 of the MDMA tablets he bought from Farrar to a DEA agent. These pills were an illegal form of MDMA. Canavan also testified that when he attempted to buy MDMA directly from Defendant, Defendant had told him to use Farrar as a middleman.

In addition, other witnesses testified about transactions that they had with Defendant involving cocaine and MDMA. One of these witnesses, Andre Bedard, stated that he had conducted deals in the same manner as Farrar had with Defendant. He specifically testified that Defendant had warned him not to use the terms "MDMA" and "Ecstasy" on the telephone.

Farrar also testified about his participation in the drug deal on 30 September 1994 that led to Defendant's arrest. Defendant had contacted Farrar and informed him that he had MDMA available, and Farrar (working for the DEA) then contacted Smith (the buyer) to set up a transaction. Smith gave Farrar money and the title to a car, which Farrar gave to Defendant. Defendant then left and met with Lehr (the supplier) to purchase 3,000 tablets of what was supposed to be MDMA. These tablets later turned out to be a noncontrolled legal substance. In the meantime, to complete

2

the transaction, Farrar picked up a package from the DEA to give it to Smith. Following these transactions, Defendant, Smith, and Lehr were arrested.

Based on this evidence, Defendant was convicted by a jury for the conspiracy to possess with the intent to distribute quantities of MDMA, distribution of MDMA, and attempt to possess with the intent to distribute MDMA. Defendant's motion for a new trial and judgment of acquittal were denied, and Defendant appealed.

## *Discussion*[2]

Defendant argues that he did not intend to sell illegal drugs on 30 September 1994; instead, he contends that he was merely passing off a legal substance as MDMA, an illegal drug. Defendant says that, because the pills were, in fact, not an illegal substance, the evidence was insufficient to convict him of Count VI—attempt to possess MDMA with the intent to distribute.

In evaluating the sufficiency of evidence, a question of law, we conduct a de novo review. *United States v. Kelly,* 888 F.2d 732, 739 (11th Cir.1989). Also, we look at the evidence in the light most favorable to the government and accept all of the jury's inferences and determinations of credibility. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

To convict for attempt, the government must prove: (1) the defendant was acting with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting; and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime. *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir.1974). We later clarified this test in *United States v. Oviedo,* 525 F.2d 881, 885 (5th Cir.1976), and wrote that for a defendant to be guilty of attempt, the defendant's objective acts, without reliance on the

---

[2]In addition to the issues discussed, Defendant made the following claims on appeal: (1) that the government, through prosecutorial misconduct, violated Defendant's Sixth Amendment right to counsel of his choice; (2) that the district court erred in failing to exclude Casey Caylor's testimony; (3) that the trial court erred in failing to grant Defendant's motion for judgment of acquittal; (4) that the district court erred in denying Defendant's motion for severance; (5) that insufficient evidence supported Defendant's conviction on Count V of the indictment, distribution of MDMA; and (6) that the trial court erred in instructing the jury. We conclude that none of these contentions have merit and affirm the district court's decision on each of these matters.

accompanying mens rea, must mark the defendant's conduct as criminal. "In other words, the defendant's acts, taken as a whole, must strongly corroborate the required culpability; they must not be equivocal." *United States v. McDowell,* 705 F.2d 426, 428 (11th Cir.1983) (citing *United States v. Korn,* 557 F.2d 1089 (5th Cir.1977)).

In this case, the Defendant's objective acts, taken as a whole, unequivocally mark his conduct as criminal. The evidence established that the Defendant was periodically involved in systematic and continuous illegal drug transactions. Defendant's objective acts include: (1) multiple drug transactions with Farrar and Bedard; (2) clandestine behavior between Defendant, Farrar, and Bedard on deals for MDMA; (3) systematic use of a middleman in conducting the transactions; (4) a large-scale drug deal for MDMA involving several other parties; and (5) the exchange of large sums of money, indicating the illegal nature of the substances.

Viewing the evidence as a whole and in favor of the government, we cannot say the fact that legal pills were sold on this particular occasion (30 September 1994) by Defendant casts doubt on the unequivocal criminal nature of Defendant's conduct. *Cf. McDowell,* 705 F.2d at 428 (upholding conviction for attempted possession with intent to distribute, despite defendant's refusal to complete transaction, based on (1) prior drug transaction; (2) conversations about the deal; (3) defendant's trip to the site of deal; and (4) possession of drug paraphernalia and gun by defendant). Simply because Defendant received no illegal drugs from his supplier on this occasion does not provide a defense to a crime for which his objective acts clearly demonstrate an intent to commit.

AFFIRMED.