[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 05, 2010
JOHN LEY
CLERK

No. 09-10528
Non-Argument Calendar
_____

D. C. Docket No. 08-20287-CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXEI JUBIEL,
DIEGO DIAZ DE LA CRUZ,
OMAR SILVA MEDINA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 5, 2010)

Before EDMONDSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Alexei Jubiel, Diego Diaz de la Cruz (Cruz), and Omar Silva Medina (Silva) appeal their convictions and sentences for conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count I); attempt to possess with intent to distribute five kilograms or more of cocaine (Count II); conspiracy to affect interstate commerce by means of robbery (Count III); attempt to affect interstate commerce by means of robbery (Count IV); conspiracy to use and possess a firearm in furtherance of a crime of violence and a drug trafficking offense (Count V); and carrying a firearm in furtherance of a crime of violence and a drug trafficking offense (Count VI). Each Appellant asserts several issues on appeal. We address each of the issues in turn and affirm their convictions and sentences.

I.

All Appellants challenge the district court's admission of video and audio tapes taken by police, along with the English transcripts interpreting the conversations thereon. Appellants assert that because the videos contained several segments that were inaudible and a minor translation error, they were unreliable. Appellants also claim the district court plainly erred when it did not require the court reporter to type the transcripts or a description of the tapes into the record to allow for appellate review.

When, as here, defendants did not object to the admission of tapes or transcripts at trial, we review their admission for plain error. *See United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) [that affects] the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quotations omitted). "Before an error is subject to correction under the plain error rule, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *United States v. Lett*, 483 F.3d 782, 790 (11th Cir. 2007).

We have not adopted a "formulistic standard" regarding the admission of videotapes and transcripts into evidence. *United States v. Greenfield*, 574 F.2d 305, 307 (5th Cir. 1978).[1] "Tapes are not *per se* inadmissible because they are partially inaudible; the issue is whether the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *Id.* (quotations omitted). "This determination is left to the sound discretion of the trial judge." *Id.* (quotations omitted). Where a tape is in a language other than English, we have

---

[1]In *Bonner v. City of Prichard*, this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

suggested a party challenging the submission of an English-language transcript utilize the following procedures:

> Initially, the district court and the parties should make an effort to produce an "official" or "stipulated" transcript, one which satisfies all sides. If such an "official" transcript cannot be produced, then each side should produce its own version of a transcript or its own version of the disputed portions. In addition, each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version.

*United States v. Le*, 256 F.3d 1229, 1238 (11th Cir. 2001) (quoting *United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir. 1985)).

Appellants did not object to tapes or transcripts at trial and have failed to demonstrate any plain error associated with their admission. The only mistranslation they have cited was insubstantial and was corrected by stipulation at the trial.[2] Appellants did not attempt to offer their own translation of the tapes, nor do they point to any problem with the ultimate translation provided. With respect to Appellants' argument the district court deprived them of a fair opportunity for appellate review by not directing the court reporter to describe the video and audio recordings in the trial transcript and by not including the transcripts in the record on appeal, we note the tapes and transcripts were introduced into evidence at trial.

---

[2]At one point on the recording, Silva said, "Olvidate de eso, olvidate, olvidate," which had been translated as "forget it, don't worry, forget it." Detective Sanchez acknowledged Silva had not use a word for "Don't worry about it." The government later agreed to change the translation to "Forget it. Forget it. Forget it."

4

Therefore, they should have been available at the district court for appellate counsel to review. Moreover, the Appellants have not moved to supplement the record on appeal with the tapes or transcripts. Appellants provide nothing other than vague speculation to suggest they were unfairly prejudiced by the admission of the tapes and transcripts at trial. The district court did not plainly err in admitting the tapes and transcripts into evidence.

II.

All Appellants next contend the district court committed reversible error in admitting testimony Appellants had previously committed other crimes. They claim this violated Rules 404(b) and 403 of the Federal Rules of Evidence. We review a district court's evidentiary rulings, including a decision to admit evidence regarding a defendant's involvement in other crimes, for an abuse of discretion. *United States v. Edouard*, 485 F.3d 1324, 1343 (11th Cir. 2007). Even if the district court made an erroneous evidentiary ruling, we need not reverse the defendant's conviction if we conclude the error was harmless. *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999). An evidentiary error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *Id.* (quotation omitted).

The district court did not abuse its discretion in any way that substantially influenced the verdict. First evidence of Jubiel's and Silva's prior criminal activity was admissible under Rule 404(b) of the Federal Rules of Evidence. Extrinsic evidence "of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Jubiel and Silva claimed they did not know about the plan to rob the cocaine stash house and also argued their association with the group of co-defendants at the time of the conspiracy was unrelated to the crime. Thus, they put their intent at issue. Testimony at trial that Jubiel and Silva had committed previous robberies of marijuana grow-houses with a nearly identical group of accomplices, using nearly identical vehicles, tools, and strategies was thus appropriate to contradict their assertions.

There was no evidence Cruz participated in the previous marijuana grow-house robberies. However, in response to the prosecutor's question of why Flores, a co-conspirator, trusted Cruz to join the conspiracy, Flores testified he heard Cruz had allegedly "ripped off" some people. The district court judge cut Flores off. Although the judge initially indicated he would strike the statement, his instruction

to the jury was somewhat ambiguous.  Nevertheless, we find the admission of the statement against Cruz does not constitute reversible error.  It is unlikely that Flores's brief, interrupted statement had a substantial influence on the jury's verdict, and the Government introduced substantial independent evidence of Cruz's guilt.  *See infra,* Section IV.  Therefore, any error in not expressly striking Flores's reference to Cruz's prior criminal activity was harmless.

Next we conclude the district court did not abuse its discretion in finding the evidence of Jubiel's and Silva's prior criminal activity was intertwined with evidence of the charged offenses.  Evidence is not extrinsic, and therefore falls outside the scope of Rule 404(b), if it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."  *Edouard*, 485 F.3d at 1344 (quotation omitted).  Evidence is inextricably intertwined with the charged offense when it "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."  *Id.* (quotation omitted).

Flores and Borrego, two members of the conspiracy, repeatedly emphasized during their meetings with Detective Sanchez and the confidential informant that

they were professionals who had committed similar robberies in the past. Flores tesified he had been involved in two prior robberies of marijuana grow houses with Machin, Silva, and Jubiel. Detective Sanchez explained his task force only targeted active robbery groups, and, therefore, determining whether the defendants had committed similar robberies in the past was a key part of his investigation. Because the evidence concerning the prior grow house robberies was inextricably intertwined with the testimony regarding how the investigation in this case unfolded, the district court did not abuse its discretion in ruling the evidence fell outside the scope of Rule 404(b).

We further conclude the district court did not violate Rule 403 in admitting evidence of prior robberies committed by Jubiel and Silva. Evidence of a defendant's prior criminal activity, regardless of whether it falls inside or outside of the scope of Rule 404(b), must satisfy the requirements of Rule 403. *Edouard*, 485 F.3d at 1344. Rule 403 states relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We have explained "Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility." *Edouard*,

8

485 F.3d at 1344 n.8 (quotation and alteration omitted).  In determining whether evidence should have been excluded under Rule 403, we view the evidence "in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id.* (quotation omitted).  Having reviewed the grow-house-robbery evidence admitted in relation to the intent arguments the evidence was intended to combat we conclude Jubiel and Silva have failed to demonstrate the district court abused its discretion under Rule 403 in admitting the evidence.

III.

Appellants next assert the district court provided the jury with an erroneous definition of wilfulness.  Generally, we review the legality of a jury instruction *de novo*, but defer to the district court on the specific phrasing of an instruction, absent an abuse of discretion.  *United States v. Prather*,  205 F.3d 1265, 1270 (11th Cir. 2000).  Because Appellants did not object to the district court's definition of "willfully" at trial, however, we review this claim for plain error.  *See id.* at 1271.  District courts "have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts, and we will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a

substantial way as to violate due process." *Id.* at 1270 (quotations omitted). The district court is not required to use the Eleventh Circuit Pattern Jury Instructions, and we have repeatedly approved jury instructions that do not exactly track the language of the pattern instructions. *United States v. Veltmann*, 6 F.3d 1483, 1492 (11th Cir. 1993).

The district court twice instructed the jury that for a defendant to be guilty of conspiracy, the evidence must show "the defendant, knowing the unlawful purpose of the plan, joined in it willfully, that is, with the intent to further its unlawful purpose." This instruction conveyed the substance of the relevant pattern instruction on "wilfully," which defines the term in this context as "voluntarily and purposely, with the specific intent to do something that the law forbids; that is with bad purpose either to disobey or disregard the law." Eleventh Circuit Pattern Jury Instructions (Criminal Cases) 9.1 (2003). Because the district court's definition of "willfully" did not misstate the law or improperly guide the jury, Appellants have not demonstrated plain error with respect to this issue.

IV.

Appellant Cruz raises several issues independently. Appellant Cruz first claims the evidence was insufficient to support his convictions.[3] We review *de*

---

[3]To the extent Jubiel or Silva attempted to adopt this argument, we find Cruz's arguments regarding sufficiency of the evidence are "too individualized to be generally adopted." *See*

*novo* the sufficiency of the evidence to support the jury's verdict in a criminal case, "viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict." *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). Evidence is sufficient to support a defendant's conviction "if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* at 1284-85 (quotation omitted).

## A.

We first address Cruz's conspiracy convictions. Cruz was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count I); to affect interstate commerce by means of robbery (Count III); and to use and possess a firearm in furtherance of a crime of violence and a drug trafficking offense (Count V).

To convict a defendant of conspiracy, the Government must prove: "(1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998). The Government may prove the existence of conspiracy through circumstantial evidence, such as the conduct of persons allegedly involved in the scheme. *United States v. Seher,* 562 F.3d 1344,

*United States v. Cooper*, 203 F.3d 1279, 1285 n.4 (11th Cir. 2000). We, therefore, address this claim only as relates to Cruz.

11

1364 (11th Cir. 2009). The Government need not establish a defendant knew every detail of a conspiracy, but must establish he "knew the essential nature of the conspiracy." *United States v. Payne*, 750 F.2d 844, 859 (11th Cir. 1985).

Cruz asserts his convictions must be overturned because the Government failed to show he knew the essential nature of the conspiracy: that the group would be stealing cocaine and committing a robbery affecting interstate commerce. Cruz is correct that the Government was required to prove his knowledge of those facts. *See United States v. Martinez*, 83 F.3d 371, 374 (11th Cir. 1996) (reversing a conviction for conspiracy to possess with intent to distribute cocaine because the defendant's statement that he had "men and guns ready" to facilitate a robbery was insufficient to prove he knew the plan was to steal cocaine). *Id.*; *see also United States v. Charles*, 313 F.3d 1278, 1284–87 (11th Cir. 2002) (holding evidence was insufficient to support a defendant's conspiracy conviction because all references to drugs were made in a language the defendant did not understand).

The evidence was sufficient to show Cruz understood the plot involved stealing cocaine in a manner affecting interstate commerce. The interstate commerce element of the Hobbs Act is satisfied in cases involving law enforcement sting operations where the narcotics the defendants intend to steal do not actually exist. *See* 18 U.S.C. § 1951(a); *United States v. Taylor*, 480 F.3d 1025,

1026-27 (11th Cir. 2007). The Government presented testimony at trial showing Cruz attended meetings at which the plot to rob the cocaine stash house was discussed in detail. Evidence also demonstrated Cruz acquired firearms the group had agreed were needed for the robbery. When he was arrested, Cruz was in the car of the leader of the group of robbers who had just explained to a Confidential Informant that he was on his was to the airport to see the cocaine the group intended to steal. When police stopped the car and arrested the occupants, including Cruz, the police found firearms in the trunk of the vehicle as well as gloves and restraints, which witnesses testified the group had obtained for the purpose of accomplishing their plot. This was sufficient to allow a jury to infer Cruz knew he was joining a conspiracy to rob a cocaine stash house.

Moreover, when a criminal defendant testifies, the jury is entitled to reject the defendant's testimony and to consider it as substantive evidence of his guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). "At least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense." *Id.* at 314-15. "This rule applies with special force where the elements to be proved for a conviction include highly subjective elements" such as intent or knowledge. *Id.* at 315. Because Cruz

13

testified in his own defense and denied any knowledge regarding a robbery, the jury was entitled to reject his testimony and to use it as substantive evidence against him. The evidence presented at trial was sufficient to allow the jury to infer Cruz understood and was part of a plan to rob the cocaine stash house.

B.

We next address Cruz's attempt convictions. Cruz was convicted of attempt to possess with intent to distribute five kilograms or more of cocaine (Count II) and attempt to affect interstate commerce by means of robbery (Count IV). In order to convict a defendant of attempt, the Government has to prove "(1) the defendant was acting with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting; and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime." *United States v. Carothers*, 121 F.3d 659, 661 (11th Cir. 1997). "[T]he defendant's objective acts, without reliance on the accompanying mens rea, must mark the defendant's conduct as criminal." *Id.* "'In other words, the defendant's acts, taken as a whole, must strongly corroborate the required culpability; they must not be equivocal.'" *Id.* (quoting *United States v. McDowell*, 705 F.2d 426, 428 (11th Cir. 1983)). Cruz challenges the sufficiency

14

of the Government's evidence of his mens rea and the group's substantial step toward committing the crime.

The Government presented sufficient evidence to defeat Cruz's claim. Cruz and his co-Appellants attended meetings planning the robbery of the cocaine stash house and had armed themselves with the weapons and tools needed for the job. Although Machin, the leader of the robbery group, and the other group members may have had some lingering suspicions as to whether the confidential informant and Detective Sanchez, the undercover officer, were involved with law enforcement, it appears they fully intended to proceed with the robbery despite those suspicions. When Appellants and their co-conspirators were arrested, they were driving toward the location of the target cocaine. The evidence was, therefore, sufficient to allow the jury to infer Appellants planned to rob the cocaine stash house and had taken substantial steps toward the commission of that crime.

C.

Lastly, we address the sufficiency of the evidence to support Cruz's conviction under 18 U.S.C. § 924(c). To prove a 924(c) violation, the Government was required to show Cruz carried firearms during and in relation to a drug trafficking offense. *See* 18 U.S.C. § 924(c)(1)(A). Cruz was arrested driving to site of the cocaine he and his accomplices intended to steal, in a car carrying four

15

firearms. Testimony showed Cruz had personally acquired two of the firearms for the job. We thus conclude Cruz's conviction under § 924(c) was based on sufficient evidence.

V.

Cruz next contends the district court abused its discretion in excluding testimony of a witness who claimed to see two Government witnesses conferring during a trial recess, in violation of a sequestration order. "The district court has broad discretion in ruling upon the relevancy and admissibility of evidence." *United States v. Williams*, 954 F.2d 668, 671 (11th Cir. 1992). "This discretion, however, does not extend to the exclusion of crucial relevant evidence necessary to establish a valid defense." *Id.* The district court may exclude testimony under Federal Rule of Evidence 403 if it determines the probative value of that evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The district court took the testimony of a proposed defense witness, Duran, in an *ex parte* hearing before determining whether to allow Appellants to call him as a witness. Duran indicated he had witnessed a conversation between Flores and Borrego during an overnight recess in Borrego's testimony. However, Duran

16

explained he had been unable to overhear what was said during that conversation and noted Cruz was in a better position to hear the discussion. The district court allowed Cruz to testify he had witnessed the conversation, and that Borrego had been telling Flores about his testimony and about the questions that were being asked in court. As Duran could not hear the conversation, his testimony would have been of limited probative value. It would also have been cumulative to the testimony of Cruz. Further, Duran's attorney noted that because Duran was a defendant in an unrelated trial, the attorney would advise him not to testify if called as a witness for Cruz. Under the circumstances, the district court did not abuse its discretion in excluding Duran's testimony.

## VI.

Cruz contends his constitutional rights were violated when the district court gave instructions that his consultation with counsel should be limited during an overnight recess. Generally, we review claims of constitutional error *de novo.* *United States v. Brown*, 586 F.3d 1342, 1347 (11th Cir. 2009). In the absence of an objection at trial,[4] however, we review the district court's ruling for plain error. *See United States v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005) (noting a

---

[4]It appears Cruz failed to make a proper objection to the district court's order instructing him not to confer with his attorney about his testimony during the overnight recess. Although counsel initially asserted he could answer Cruz's questions, he did not lodge a formal objection, and he ultimately acquiesced to the court's ruling by stating, "Okay, judge, if you say so."

17

constitutional challenge raised for the first time on appeal is reviewed for plain error).

The Sixth Amendment guarantees criminal defendants the right to assistance of counsel. U.S. Const. amend. VI. A district court's order prohibiting a defendant entirely from consulting with his attorney during an overnight recess violates the defendant's right to assistance of counsel. *Geders v. United States*, 96 S.Ct. 1330, 1332-33, 1335-37 (1976). We have indicated an order instructing a defendant not to discuss his cross-examination testimony with defense counsel during an overnight recess may violate the rule announced in *Geders*, where the record shows they desired to do so. *Crutchfield v. Wainwright*, 803 F.2d 1103, 1110 (11th Cir. 1986) (*en banc*) (Hatchett, J., plurality opinion); *but see id.* at 1114 (Tjoflat, J., specially concurring).

To preserve a deprivation of assistance of counsel claim, however, "a defendant or the defendant's counsel must indicate, on the record, a desire to confer." *Id.* at 1109. The defendant must also show "the prohibition actually prevented the opportunity to confer with counsel." *Id*. at 1110. In *Crutchfield*, we determined there was no deprivation of the right to counsel because the record "d[id] not reflect a desire to consult or an objection to the trial court's admonition." *Id.* at 1111.

18

Although the district court ordered Cruz not to discuss his cross-examination testimony with his defense counsel, neither Cruz nor his attorney indicated they wished to confer regarding Cruz's trial testimony. While counsel stated he believed he could answer Cruz's questions, he did not indicate those questions would relate to Cruz's testimony nor was any official mention made of a desire or an attempt to confer as to the cross-examination testimony. Further, the record indicates defense counsel was unavailable to confer with his client for a large portion of the evening due to a medical problem. The district court afforded Cruz an opportunity to speak with his defense counsel the following morning. The court indicated Cruz could retake the witness stand if there were additional matters that needed to be covered after the meeting. Following discussions with his attorney, Cruz ultimately elected not to retake the stand. Therefore, even if the district court erred in ordering Cruz not to discuss his testimony with his attorney, Cruz failed to show his order contradicted any recorded desire to discuss that testimony. Cruz has, therefore, failed to meet his burden of demonstrating plain error in regard to this issue.

## VII.

Cruz also asserts his right to the assistance of counsel was violated because his attorney was absent when the court responded to the jury's request during deliberation that they be provided with a video admitted into evidence at trial. Cruz

19

did not object at the time of the alleged violation, so we review for plain error. *See Peters*, 403 F.3d at 1270.

A criminal defendant is entitled to the assistance of counsel during all critical stages of the criminal justice process. *Iowa v. Tovar*, 124 S. Ct. 1379, 1383 (2004). The Supreme Court has explained a "critical stage" is "a step of a criminal proceeding, such as arraignment, that [holds] significant consequences for the accused." *Bell v. Cone*, 122 S.Ct. 1843, 1851 (2002). We have not previously addressed the question of whether the consideration of a jury note is a critical stage of a trial *per se*, and we need not resolve the issue here.

Counsel for Jubiel had agreed to fill in for Cruz's counsel who was sick on the day of the jury's deliberation. Jubiel's counsel informed the court that Cruz did not have any problem with the substitute in representation. Cruz does not claim Jubiel's counsel made a false representation in so doing. In its note to the court, the jury asked to view Government's Exhibit 12D. Exhibits 12B and 12D were police surveillance videos taken the day of the intended robbery while Cruz, Jubiel, Machin, and Flores were sitting in Machin's vehicle in the parking lot of a Home Depot store waiting for a phone call from Detective Sanchez informing them of the address of the purported cocaine stash house. Both videos had been admitted into evidence. Exhibit 12B had been played for the jury during the trial; Exhibit 12D

20

had not been published. When the court advised the parties of the note, Jubiel's counsel suggested the jury likely meant to request the video shown at trial, 12B. The district court ultimately elected to play Exhibit 12B, rather than the video the jury had requested, 12D, and instructed the jurors to submit another note if they wished to view a different video. The jury did not request an additional video.

We conclude the court's decision to play Exhibit 12B did not result in any prejudice to Cruz, because the jury had already seen the video provided during deliberation during the Government's case-in-chief. Cruz has not shown his substantial rights were affected by the court's decision to provide the video to the jury. Thus, he has failed to establish plain error with respect to this issue.

## VIII.

Appellants, together, contend even if they failed to show any single reversible error, the aggregation of smaller errors deprived them of a fair trial. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation omitted). We reject this contention. Appellants have not established the district court committed any errors that, together, deprived them of a fair trial.

IX.

Finally, Appellants Jubiel and Cruz assert the district court erred in imposing

consecutive 60-month sentences for their convictions under18 U.S.C. § 924(c),

because the plain language of § 924(c) prohibits the imposition of consecutive

sentences when the defendant is subject to a greater mandatory-minimum sentence

for another offense.  Jubiel and Cruz were subject to ten-year mandatory minimum

sentences for their drug conspiracy convictions.

We normally review questions of statutory interpretation *de novo*.  *United

States v. Segarra*, 582 F.3d 1269, 1271 (11th Cir. 2009).   Because Jubiel and Cruz

failed to raise this issue before the district court, however, we review their claim for

plain error.  *See Raad*, 406 F.3d at 1323.  In relevant part, 18 U.S.C. § 924(c)(1)(A)

provides:

> Except to the extent that a greater minimum sentence is otherwise
> provided by this subsection or by any other provision of law, any
> person who, during and in relation to any crime of violence or drug
> trafficking crime (including a crime of violence or drug trafficking
> crime that provides for an enhanced punishment if committed by the
> use of a deadly or dangerous weapon or device) . . . uses or carries a
> firearm, or who, in furtherance of any such crime, possesses a firearm,
> shall, in addition to the punishment provided for such crime of
> violence or drug trafficking crime-- (i)  be sentenced to a term of
> imprisonment of not less than 5 years.

In *Segarra*, we held the "except" clause of § 924(c) does not "limit

consecutive sentences imposed for § 924(c) offenses and the underlying drug

22

crimes." 582 F.3d at 1272. "Rather," we explained, "the clause is intended to prevent consecutive mandatory minimum sentences for more than one firearm offense." *Id.* We held the plain language of the statute "dictates consecutive sentences" when the defendant is subject to mandatory minimum sentences for both a § 924(c) offense and the underlying drug offense. *Id.* at 1273.

Our decision in *Segarra* forecloses Jubiel's and Cruz's argument. Although Jubiel and Cruz argue *Segarra* is inconsistent with the plain language of § 924(c), the prior panel precedent rule precludes us from re-examining our earlier holding. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001). Therefore, we conclude the district court did not plainly err by imposing consecutive sentences under § 924(c).[5]

Accordingly, after a thorough review of the record and briefs, we affirm Appellants' convictions and sentences.

**AFFIRMED.**

---

[5]We note that Supreme Court recently granted petitions for *certiorari* in two cases presenting this issue, *Abbott v. United States* (No. 09-479) (U.S. Jan. 25, 2010), and *Gould v. United States* (No. 09-7073) (U.S. Jan. 25, 2010).