303 Ga. 48
FINAL COPY

S17A2019.  CALLOWAY v. THE STATE.

PETERSON, Justice.

Suzzett Marie Calloway was convicted in a federal court of several crimes related to manufacturing methamphetamine. She then was convicted in a state court of felony murder predicated on manufacturing meth; the state charges arose from the same conduct as the federal charges.[1] Calloway argues that the

---

[1] For crimes occurring on February 17, 2001, a Catoosa County grand jury returned an indictment charging Calloway with two counts of felony murder (one count predicated on manufacturing meth and another based on an attempt to manufacture meth), manufacturing meth, possession of meth with intent to distribute, and possession of meth. Following a trial held January 26 through February 3, 2004, a jury acquitted Calloway of felony murder predicated on attempting to manufacture meth, but found her guilty on all other counts. The trial court sentenced Calloway to life in prison for felony murder and merged the manufacturing meth count into the felony murder conviction. The trial court also sentenced Calloway to 30 years for possession of meth with intent to distribute and 15 years for possession of meth. Her state sentences were to run consecutively to her federal sentence. Calloway filed a timely motion for new trial, later amended, which the trial court denied on January 20, 2005, except for merging the possession counts into the felony murder conviction. Calloway filed a timely notice of appeal from that order in February 2005. For reasons not evident in the record, the Catoosa County Clerk's office did not transmit the notice of appeal and the record to this Court until August 2017. The case was docketed to this Court's August 2017 term and submitted for a decision on the briefs.

State's prosecution was barred by OCGA § 16-1-8 (c), which, in some instances, prohibits a successive prosecution when the accused was previously acquitted or convicted in federal court for the same conduct. Calloway also argues that the evidence was insufficient to support the jury's verdicts and that the trial court erred in allowing the prosecutor to "read the law" to the jury during closing arguments.

We conclude that the evidence was sufficient to support the jury's verdicts, but Calloway's federal conviction for attempt to manufacture meth barred a successive prosecution for the state crime of felony murder predicated on manufacturing meth. We therefore reverse her felony murder conviction, which unmerges her other convictions. Of those unmerged convictions, all counts were barred except possession of meth with intent to distribute, and we remand to the trial court for resentencing on that count. Our reversal of Calloway's felony murder conviction renders moot her argument about the prosecutor's reading of the law on the issue of causation as an element of felony

murder. Accordingly, we affirm in part, reverse in part, and remand for resentencing.[2]

Viewed in the light most favorable to the verdict, the trial evidence showed the following. Calloway and her co-defendant husband, Chris Hicks,[3] had two children, an infant named Chelton (the victim) and his older brother. Lance and Connie Rockholt were friends of the defendants and would frequently visit the defendants to smoke meth, which Hicks manufactured and supplied. Calloway routinely bought pseudoephedrine tablets and other supplies that Hicks needed to manufacture meth. She and Hicks also sold meth to others, and Lance testified that equipment and ingredients used to make meth were located throughout the defendants' home.

On the night of February 17, 2001, the Rockholts visited the defendants at their Catoosa County apartment. When the Rockholts arrived, Hicks was making meth in a back room, while Calloway was in the kitchen. Two men came

---

[2] We note with serious concern the extreme delay between the February 2005 notice of appeal and the August 2017 transmittal of the record to this Court. The record does not reflect any particular reason for this delay, but at some point well before the 12-year mark, such an extreme delay became everyone's fault.

[3] Hicks was tried with Calloway and was also convicted of felony murder.

3

to the apartment and asked Calloway a question, at which point she went to talk to Hicks and then returned to talk to the two men. The men then left the apartment, and Calloway returned to the kitchen.

At some point, Hicks came out of the back room holding what Lance called a "little flask of dope" and went into the kitchen. Hicks returned to the living room carrying a coffee pot containing a clear liquid and told Lance that he had "over gassed " or "over lit" his "dope." Hicks then retrieved a propane burner, set the burner on the coffee table, and began to heat the coffee pot on the burner. Vapors from the coffee pot caught fire, and the liquid inside the pot erupted in a flame, melting the plastic handle held by Hicks. Hicks dropped the flaming coffee pot, igniting the living room.

Everyone but Chelton, who was asleep in a different room, escaped. Once outside, the group realized that Chelton was still inside the apartment, and they unsuccessfully tried placing a ladder next to Chelton's bedroom several times before Hicks was able to enter the room and retrieve Chelton. By that point, Chelton had been severely burned. Calloway and Hicks took Chelton to the hospital, while the Rockholts left with the defendants' other child. Chelton

received numerous skin grafts and a tracheostomy tube due to inhalation injuries from the fire, and he died in June 2001 when his airway became obstructed.

Following the fire, a state fire marshal investigator separately talked with Hicks and Calloway, who both reported that the fire started when a wall heater exploded and caught fire. Pursuant to consent given by Hicks, the investigator inspected the property but did not find any evidence to support the defendants' claims about the cause of the fire. Instead, the investigator found burn patterns indicative of a "flash fire." He also found an electric heater that could not have exploded, which he ruled out as the cause of the fire. Police planned to arrest Calloway and Hicks for felony murder after Chelton's funeral, but the police did not see Calloway and Hicks there.

In July 2001, Kentucky law enforcement received a tip that Calloway was purchasing large quantities of pseudoephedrine pills. Police officers followed Calloway as she left a store and conducted a traffic stop when she was seen driving erratically. During the stop, Calloway appeared to be under the influence of meth. Police officers searched her car and found numerous items to make meth, including over 200 pseudoephedrine pills.

In January 2002, Calloway was indicted in a federal district court for conspiracy to manufacture meth, attempt to manufacture meth, and creating a substantial risk of harm during the attempted manufacture of meth for the events that occurred in Catoosa County on February 17, 2001. Calloway was convicted of her federal charges in December 2002.[4] Around the same time as the federal indictment was returned, a Catoosa County grand jury also returned a four-count indictment against Calloway, charging her with felony murder predicated on manufacturing meth and three drug offenses. In March 2003, Calloway pled guilty to the drug offenses and to involuntary manslaughter as a lesser included offense of felony murder. After she was allowed to withdraw her plea in June 2003, she was re-indicted in August 2003; the indictment included the same charges as before and another felony murder count predicated on attempting to manufacture meth. Calloway was tried and convicted of all counts except the felony murder count based on attempt to manufacture meth.

---

[4] Calloway received a total sentence of 20 years for her federal convictions.

1. Calloway first argues that the jury's verdict was without sufficient evidence to support it.[5] She argues that there was no evidence she participated in the predicate felony of manufacturing meth, possessed meth, or attempted to distribute it. She argues that Hicks was the only person who participated in the making of meth and that he caused the fire. She acknowledges the evidence establishing that she bought pseudoephedrine pills, but argues that this occurred at times other than on the night of the fire.

When considering the sufficiency of the evidence, we apply the familiar standard set forth in Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), in which we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jones v. State, 292 Ga. 656, 657-658 (1) (a) (740 SE2d 590) (2013). A person who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime may be convicted of the crime as a

_____

[5] Calloway also argues that the verdict was contrary to the evidence, but this is a ground on which only a trial court may exercise its discretion to grant a new trial; we do not have the same authority. See Slaton v. State, 296 Ga. 122, 125 (2) (765 SE2d 332) (2014).

party to the crime. OCGA § 16-2-20 (b) (3), (4). "Although mere presence at the scene of a crime is not sufficient to prove that one was a party to the crime, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." Powell v. State, 291 Ga. 743, 744-745 (1) (733 SE2d 294) (2012) (citation and punctuation omitted).

There is no dispute that Chelton's death was caused by Hicks manufacturing meth, and the evidence was sufficient for the jury to find that Calloway participated in the manufacture of meth. Lance testified that Calloway frequently bought materials that Hicks needed to make meth, including pseudoephedrine pills, a fact that Calloway does not dispute. Lance also testified that Calloway and Hicks possessed materials used to make meth and that many items used to make meth could be found throughout the defendants' apartment. The Rockholts also testified that Hicks and Calloway supplied meth on the many occasions in which they smoked meth together, and Lance testified that he saw Hicks and Calloway sell meth "quite a few times." Based on the foregoing, the evidence was more than sufficient to support the jury's finding that Calloway

8

was guilty of felony murder, manufacturing meth, possession of meth with intent to distribute, and simple possession.

2. Calloway next argues that the State was barred from prosecuting her under the statutory double jeopardy provisions of OCGA § 16-1-8 (c), because she already had been convicted of federal crimes stemming from the same conduct. We agree as to some of the state charges.

States are sovereigns separate from the federal government, and a state's power to undertake criminal prosecutions is derived from its own inherent sovereignty. Heath v. Alabama, 474 U. S. 82, 89 (106 SCt 433, 88 LE2d 387) (1985); see also Puerto Rico v. Sanchez Valle, __ U. S. __ (136 SCt 1863, 1871, 195 LE2d 179) (2016). Under the dual sovereignty doctrine, where a single act violates the law of two sovereigns (e.g., the United States and a state), an individual may be prosecuted and punished by each sovereign without violating double jeopardy. See Heath, 474 U. S. at 88; United States v. Lanza, 260 U. S. 377, 382 (43 SCt 141, 67 LE 314) (1922). Under this doctrine, the State was not constitutionally barred from prosecuting Calloway merely because the federal government had already done so. See Heath, 474 U. S. at 88; Sullivan v. State, 279 Ga. 893, 894, 900 (3) (622 SE2d 823) (2005).

The Georgia General Assembly, however, has elected to impose a statutory limitation to some successive prosecutions under OCGA § 16-1-8 (c). That statute provides:

> A prosecution is barred if the accused was formerly prosecuted in a district court of the United States for a crime which is within the concurrent jurisdiction of this state if such former prosecution resulted in either a conviction or an acquittal and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution or unless the crime was not consummated when the former trial began.

For the statute to bar a state prosecution, three elements must be met: (1) a "threshold" requirement that the crime is within the State's concurrent jurisdiction; (2) the federal prosecution resulted in a conviction or acquittal; and (3) the state and federal prosecutions are for the same conduct and do not require proof of a fact not required by the other (or the state crime was not complete at the time of the federal trial). See Sullivan, 279 Ga. at 894, 896 (1) & n.2. Applying this test to the felony murder count for which Calloway was convicted, we conclude that her felony murder prosecution was barred by OCGA § 16-1-8 (c). Reversing that conviction has the effect of unmerging her other convictions. Of those, the possession counts are not barred by the statute.

10

(a) *Calloway's felony murder conviction was barred by OCGA § 16-1-8 (c).*

(i) *The threshold element of concurrent jurisdiction is present.*

The term "concurrent jurisdiction" as used in OCGA § 16-1-8 (c) means that there "is an existing Georgia penal provision comparable to the [f]ederal crime over which a state court has jurisdiction." Sullivan, 279 Ga. at 895 (1). If no Georgia counterpart to the federal crime exists, no concurrent jurisdiction exists, because the accused could be prosecuted for that crime only in a federal district court. Id.

Here, the threshold element is satisfied. In the federal indictment, Calloway was charged with conspiracy to manufacture meth and attempt to manufacture meth in violation of 21 USC §§ 841 (b) (1) (C) and 846, as well as creating a substantial risk of harm during the attempted manufacture of meth in violation of 21 USC § 858. Although there is no Georgia statute that is a counterpart to 21 USC § 858, there are Georgia statutes that are comparable to 21 USC §§ 841 (b) (1) (C) and 846. Section 841 (b) provides the penalties for a violation of the substantive offense set forth in subsection (a), which provides, among other things, that it is "unlawful for any person knowingly or

11

intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 USC § 841 (a) (1). Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this [subchapter] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 USC § 846.

Similar to 21 USC § 841 (a) (1), OCGA § 16-13-30 makes it unlawful "to purchase, possess, or have under his or her control any controlled substance," or "manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance."[6] OCGA § 16-13-30 (a), (b). Georgia also has a counterpart to 21 USC § 846, as OCGA § 16-13-33 provides that "[a]ny person who attempts or conspires to commit any offense defined in this article shall be, upon conviction thereof, punished by imprisonment not exceeding the maximum punishment prescribed for the offense, the commission

---

[6] Although the federal offense includes an express mens rea that the state offense does not make express, we have determined that the state offense nevertheless includes the same mens rea. See Duvall v. State, 289 Ga. 540, 542 (712 SE2d 850) (2011) ("Possession of a controlled substance is not a strict liability offense. . . . [T]he criminal intent required by OCGA §[] 16-13-30 (a) . . . is intent to possess a drug with knowledge of the chemical identity of that drug."); Jackson v. State, 205 Ga. App. 513, 514 (3) (422 SE2d 673) (1992) ("[T]he State must prove the essential element of specific intent to distribute in order to establish a charge of possession of a controlled substance with intent to distribute.").

of which was the object of the attempt or conspiracy." Because there are Georgia statutes equivalent to the federal crimes for which Calloway was convicted, the threshold element of OCGA § 16-1-8 (c) has been satisfied.

(ii) *The second element of the OCGA § 16-1-8 (c) inquiry has been met.*

There is no dispute that Calloway was convicted of the charged federal crimes, so we proceed to the final step of whether the State's prosecution for felony murder was for the same conduct.

(iii) *The third element is also met, because the predicate felony of manufacturing meth was a lesser included offense in the State's prosecution of felony murder, and that predicate felony criminalizes the same conduct as the federal charge of attempt to manufacture meth.*

Where the first two elements of OCGA § 16-1-8 (c) have been met, the statute would bar the State's prosecution for the same conduct, unless the federal and state prosecution each "requires proof of a fact not required in the other prosecution" or unless the crime "was not consummated when the former trial began." OCGA § 16-1-8 (c). Here, the state and federal prosecutions were for crimes that arose from the same underlying conduct that occurred in Catoosa County on February 17, 2001. Chelton died in June 2001, so the crime of felony murder was complete at the time the federal government began prosecuting

13

Calloway in February 2002. Therefore, the State's prosecution for felony murder would be barred unless the felony murder count and the federal crimes required proof of facts not required by the other. This determination is comparable to the "required evidence" test used to determine whether an act that violates more than one statute may be prosecuted and punished as multiple offenses. See Drinkard v. Walker, 281 Ga. 211, 215 (636 SE2d 530) (2006) ("[I]f each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." (punctuation and footnote omitted)).

The federal crime of attempting to commit a drug offense requires the government to prove two elements: "(1) the defendant was acting with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting; and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime." United States v. Carothers, 121 F3d 659, 661 (11th Cir. 1997).

We compare this federal crime to the state predicate felony of manufacturing meth and then to the state charge of felony murder. The federal

charge of attempt to manufacture meth did not require proof of a fact additional to that required to prove the state charge of manufacturing meth. As discussed above, Section 841 (a) provides that it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 USC § 841 (a) (1). Similarly, OCGA § 16-13-30 makes it unlawful "to purchase, possess, or have under his or her control any controlled substance," or "manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." OCGA § 16-13-30 (a), (b). Although the federal conviction was for attempt, an attempt charge is generally a lesser included offense of the substantive offense. See OCGA § 16-4-2 ("A person . . . may not be convicted of both the criminal attempt and the completed crime."); Collins v. State, 164 Ga. App. 482, 483 (1) (297 SE2d 503) (1982); see also OCGA § 16-4-3 ("A person charged with commission of a crime may be convicted of the offense of criminal attempt as to that crime without being specifically charged with the criminal attempt in the accusation, indictment, or presentment."); Prater v. State, 273 Ga. 477, 489 (545 SE2d 864) (2001) (Carley, J.) (concurring in part and dissenting in part, and citing Collins). And

15

a predicate felony is a lesser included offense of felony murder, because the lesser offense requires no proof beyond that which is required for the conviction of the felony murder. See Perkinson v. State, 273 Ga. 491, 494 (1) (542 SE2d 92) (2001) ("It is clear that the underlying felony of a felony murder conviction is a lesser-included offense of the felony murder."); see also Prater, 273 Ga. at 481 (4) ("[P]rocedural double jeopardy bars re-prosecution for that same crime and any lesser included crime. A lesser or greater included offense is treated as the same offense for double jeopardy purposes." (citations omitted)). The federal charge of attempting to manufacture meth did not require proof of any facts additional to those required in the state prosecution of felony murder predicated on manufacturing meth. Because the elements of OCGA § 16-1-8 (c) have been met, the State's prosecution for manufacturing meth and felony murder were barred by the statute.

The State argues that prosecuting Calloway for felony murder was allowed under the reasoning of Marshall v. State, 286 Ga. 446 (689 SE2d 283) (2010). The State misreads Marshall. In Marshall, the defendant was convicted in federal court of possession of a firearm by a convicted felon, and subsequently tried in a state court for felony murder predicated on the underlying firearm

possession conduct. Id. at 447 (2). As is the case here, the state offense of felony murder required proof of additional facts (the victim's death) that were not required to be proven in the federal prosecution. Id. But, unlike the situation here, the federal offense in <u>Marshall</u> also required proof of a fact that was not required to establish the state offense — that the defendant possessed a firearm that was "in and affecting interstate commerce." Id. (citation and punctuation omitted). Moreover, due to this additional interstate element, the federal offense was not within this state's concurrent jurisdiction. Id. As a result, we held in <u>Marshall</u> that the State was not barred from prosecuting the defendant for felony murder predicated on the firearm possession conduct. Id.

Here, although the state charge of felony murder predicated on manufacturing meth requires proof of an additional fact that the federal offense of attempting to manufacture meth does not, the federal charge does not require proof of any additional facts. The State's prosecution for felony murder is therefore barred by OCGA § 16-1-8 (c), and we reverse Calloway's felony murder conviction, as well as her unmerged felony conviction for manufacturing meth. Calloway's convictions for possession and possession with intent to distribute also become unmerged as a result of the reversal of the felony murder

17

conviction, and the next question is whether the State's prosecution for these offenses was also barred by OCGA § 16-1-8 (c).

(b) *The State's prosecution of possession with intent to distribute and the federal charges of attempt or conspiracy to manufacture meth or creating a substantial risk of harm during the attempted manufacture of meth required proof of different elements.*

The possession of a controlled substance is a lesser included offense of possession with the intent to distribute, so we focus only on the greater charge. As established above, the first two elements of OCGA § 16-1-8 (c) are satisfied, so we consider the "required evidence test" element.

The proof necessary to establish possession with intent to distribute is (1) possession of a controlled substance and (2) the intent to distribute it. Proving these elements is unnecessary to establish a federal conspiracy to manufacture meth, which requires only proof of an agreement to manufacture meth — not the actual manufacture of meth — between two or more people,[7] and the state possession offense can be committed alone without proof of an agreement with another party. Thus, the evidence required for the federal conspiracy offense was different from the evidence required for the state possession offense.

---

[7] See <u>United States v. Shabani</u>, 513 U. S. 10 (115 SCt 382, 130 LE2d 225) (1994); <u>United States v. Arnold</u>, 117 F3d 1308, 1313 (11th Cir. 1997).

Likewise, the federal offense of attempt to manufacture and the state possession offense each requires proof of facts different from the other. One may possess a controlled substance intending to distribute it without being involved in an attempt to manufacture the drug. And attempting to manufacture a drug does not require proof of possession. See Carothers, 121 F3d at 661. Similarly, the possession of a drug with intent to distribute does not require proof of creating a substantial risk of harm during an attempted manufacture of the drug, and the latter offense does not depend on a showing of possession. Therefore, the State's prosecution for possession with intent to distribute was not barred by OCGA § 16-1-8 (c). We therefore remand for resentencing on this unmerged count.

3. In her last enumeration of error, Calloway argues that the trial court erred in allowing the prosecutor to "read the law" on proximate causation to the jury. This argument relates only to her felony murder conviction, which has been reversed, and is therefore moot.

Judgment affirmed in part and reversed in part, and case remanded for resentencing. All the Justices concur.

Decided February 5, 2018.

Murder. Catoosa Superior Court. Before Judge Hill.

Jennifer E. Hildebrand, for appellant.

Herbert E. Franklin, Jr., District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.